IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | CRIMINAL NO. 19-00168-KD |
| v. | * | |
| | * | |
| SAAD TAHA AHMED YOUSIF AL-QAYSY | * | |
| | * | |

**UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS**

Comes now the United States of America, by and through the United States Attorney for the Southern District of Alabama, and files this notice of its position with respect to the sentencing factors for defendant Colonel Saad Taha Ahmed Yousif al-Qaysy (herein after "Ahmed").

### BACKGROUND

On November 22, 2019, Ahmed pleaded guilty to naturalization fraud, in violation of 18 U.S.C. § 1425(a). [Doc. No. 39] As part of his plea agreement, Ahmed admitted that he knowingly and intentionally lied to United States immigration officials about the nature and extent of his Iraqi military service. [Doc. No. 40] Specifically, Ahmed claimed that he only served in the Iraqi Army between January 1, 1987 and January 1, 1991, and that the nature of his service was as an electrical engineer on a base in Baghdad. [*Id.*, p. 12]

Contrary to what he falsely claimed, Ahmed actually entered the Iraqi Army on December 8, 1983 and served until its dissolution by Coalition Forces on May 23, 2003. Ahmed was an officer in the Iraqi Army for a majority of his service, having attained a final rank of Colonel.[1] Some of the numerous military assignments that Ahmed knowingly and intentionally omitted from immigration documentation included, but were not limited to, the following:

---

[1]   Colonel is the highest ranking senior officer below Generals in the Iraqi military.

1

- First Lieutenant in the al-Quds Reconnaissance Brigade from June 12, 1985 through March 16, 1988.[2]

- First Lieutenant and then Captain in the 10th Armored Division from October 25, 1989 through November 23, 1991.[3]

- Lieutenant Colonel and then Colonel in the al-Diwaniah Public Hospital and The Saddam Center for Spinal Cord Injuries from June 9, 2001 through May 23, 2003.[4]

Ahmed purposefully hid this material information from United States officials, because another former Iraqi Army Officer advised him to do so while Ahmed was living in Egypt and applying for refugee status in the United States. [Doc. No. 40, p. 11] Thus, Ahmed's true military record was never vetted prior to his receiving refugee status and United States citizenship.

### UNITED STATES' POSITION ON THE APPLICATION OF U.S.S.G. § 2L2.2(b)(4)(A)

On January 9, 2020, the Probation Office filed its preliminary Presentence Investigation Report ("PSR") in this case. [Doc. No. 41] Based on the facts described above, Probation recommended Ahmed receive a five-level enhancement pursuant to U.S.S.G. § 2L2.2(b)(4)(A). [*Id.*, p. 6] This enhancement is applicable:

> [i]f the defendant committed any part of [naturalization fraud] to conceal the defendant's membership in, or authority over, a military . . . that was involved in a serious human rights offense during the period in which the defendant was such a member or had such authority. . . .

U.S.S.G. § 2L2.2(b)(4)(A). The term "serious human rights offenses" is defined as acts related to genocide, torture, war crimes, or the use/recruitment of child soldiers. *Id.*, app. n. 4. The

---

[2] Ahmed served as an officer in the al-Quds Reconnaissance Brigade during the Iran–Iraq War.

[3] Ahmed served as an officer in the 10th Armored Division during both the Iraqi military's invasion, and subsequent annexation, of Kuwait, as well as the Persian Gulf War against the United States.

[4] Ahmed served as a senior officer in these hospitals during the Iraq War against the United States.

defendant himself need not have be involved in the serious human rights offense for Section 2L2.2(b)(4)(A) to apply, since concealing one's own conduct is covered by a separate, much larger enhancement.  *See* U.S.S.G. § 2L2.2(b)(4)(B).

The Department of Justice – Human Rights & Special Prosecutions Section, which advises on cases of this nature, employs resident historians whose job it is to help determine whether the United States should seek the application of either of the "serious human rights offense" enhancements.  Ahmed's military record was sent for review.  While there are documented accounts of the Iraqi military committing serious human rights offenses both during the Iran–Iraq War and during the Invasion and Annexation of Kuwait, the historians were not able to trace these offenses to either the al-Quds Reconnaissance Brigade or the 10th Armored Division during the time periods Ahmed served as an officer in those units.

Of concern to the historians though, was Ahmed's presence as a senior Army officer at two Iraqi hospitals from June 9, 2001 through May 23, 2003.  Hospitals during the Saddam Hussein regime frequently served dual purposes — treatment centers for the sick and injured, and torture sites for political prisoners and military deserters.[5]  However, due to the limited records the Government of Iraq provided to the United States pertaining to Ahmed in connection with this case, it is impossible to determine what role Ahmed played in Saddam's military at those hospitals.  This is a matter that Ahmed would almost certainly have been questioned about when being vetted for refugee and citizenship, but the United States never had the opportunity to do so, because Ahmed knowingly and intentionally concealed these critical details of his military service.

---

[5]   *See, e.g., https://www.hrw.org/legacy/reports/1995/IRAQ955.htm* (last visited Feb. 6, 2020) (Human Rights Watch article discussing the torture, including forced amputations, that occurred in Iraqi hospitals); https://apnews.com/7cf7e2883ea34ce545929cd0562c8177 (last visited Feb. 6, 2020) (AP News article from 1999 discussing a military torture center built underneath a Baghdad hospital).

In light of the United States' inability to determine the precise nature of Ahmed's military involvement at the al-Diwaniah Public Hospital and The Saddam Center for Spinal Cord Injuries, the United States is not seeking the application of U.S.S.G. § 2L2.2(b)(4)(A).

Respectfully submitted this 6th day of February, 2020.

> RICHARD W. MOORE
> UNITED STATES ATTORNEY
>
> By: */s/Christopher J. Bodnar*
> Christopher J. Bodnar
> Assistant United States Attorney
> 63 South Royal Street, Suite 600
> Mobile, Alabama 36602
> (251) 441–5845
> christopher.bodnar@usdoj.gov